## CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

| | |
|---|---|
| **JOSEPH JOHNSON, JR.** §<br>POST OFFICE BOX 441572 §<br>FORT WASHINGTON, MD   20749-1572 §<br> §<br>    Plaintiff, §<br> §<br>Vs. §<br> §<br>**XEROX EDUCATION SOLUTIONS, LLC,** §<br>SERVE: CSC-LAWYERS INCORPORATING §<br>SERVICE COMPANY, Resident Agent §<br>7 SAINT PAUL STREET, SUITE 1660 §<br>BALTIMORE, MD   21202 §<br> §<br>    And §<br> §<br>**XEROX BUSINESS SERVICES, LLC,** §<br>SERVE: CSC-LAWYERS INCORPORATING §<br>SERVICE COMPANY, Resident Agent §<br>7 SAINT PAUL STREET, SUITE 1660 §<br>BALTIMORE, MD   21202 §<br> §<br>    And §<br> §<br>**XEROX CORPORATION** §<br>SERVE: CSC-LAWYERS INCORPORATING §<br>SERVICE COMPANY, Resident Agent §<br>7 SAINT PAUL STREET, SUITE 1660 §<br>BALTIMORE, MD   21202 §<br> §<br>    Defendants. § | CIVIL NO. **CAL14-05640** |

## COMPLAINT

COMES NOW, the Plaintiff, Joseph Johnson, Jr., and represents to the

Court that:

## JURISDICTION

1.     This Court has jurisdiction over the matters alleged herein as the acts and omissions given rise to this Complaint occurred in Prince George's County, Maryland.

## PARTIES

2.     Plaintiff, Joseph Johnson, Jr., is a resident of Prince George's County in Fort Washington, Maryland.

3.     Defendant, Xerox Education Solutions, LLC, ("XES"), is a Maryland Limited Liability Company, registered to do business in this state, and at all times relevant, was doing business in this state.

4.     Defendant, Xerox Business Services, LLC, ("XBS"), is a Delaware Corporation and is also registered to do business in this state, and at all times relevant, was also doing business in this state.

5.     Defendant, Xerox Corporation, ("XC"), is a Connecticut Corporation and is also registered to do business in this state, and at all times relevant, was also doing business in this state.

6.     Defendant, XBS, is a wholly-owned subsidiary of Defendant, XC, and Defendant, XES, is a wholly-owned subsidiary of Defendant, XBS.

## CONTROVERSY

### COUNT I
<u>(Negligent Servicing and/or Failure to use Due Diligence)</u>

7.    At all times relevant, as of January 31, 2012, Plaintiff allegedly owed the Department of Education $35,556.58 on a William D. Ford Federal Direct Consolidation Loan Promissory Note of which $24,997.02 plus accrued interest at the rate of 4.4 % was in dispute; hereinafter, the "student loan".

8.    At all times further relevant, the Defendants processed student loan payments for the Department of Education and were the former loan servicer of Plaintiff's student loan. As loan servicer, and under the Higher Education Opportunity Act (Public Law 110-315) (HEOA) as enacted on August 14, 2008, and which reauthorized the Higher Education Act of 1965, as amended (the HEA), 20 U.S.C. §1087(c), and under the terms of their Common Services for Borrowers (CSB) contract and 34 C.F.R. §682.208, the Defendants owed the Plaintiff a duty to use due diligence in servicing his loan, including, ensuring that payments made by the Plaintiff were applied first to late charges and collections costs that were due, then to interest that had not been paid, and finally to the principal amount of the loan.

9.    To encourage borrowers to repay their loans on time, the Defendants offered repayment incentive programs. Under a repayment incentive program, the interest rate that the Defendants charged on the borrower's loan is reduced by 0.25 percent while the borrower repays their loan under the Defendants' repayment incentive program.

3

10.     The Defendants' repayment incentive programs included an Electronic Debit Account option in which a borrower's bank automatically deducted the borrower's monthly loan payment from the borrower's checking or savings account and sends to the Defendants.

11.     At all times relevant, Plaintiff opted not to enroll nor participate in any of the Defendants' repayment incentive programs.

12.     The Defendants provided the Plaintiff with a monthly billing statement during the time that they were the servicer of the student loan. Preprinted on the front of each monthly billing statement, was the notation that payments may be made by either check or money order payable to "U.S. Department of Education". There was also a notation on the back of each monthly billing statement that stated, in part, that "if you send us a check, it will be converted into an electronic funds transfer (EFT). This means we will copy your check and use the account information to electronically debit your account for the amount of the check. We will destroy your original check but will keep a copy of it. If the EFT cannot be processed for technical reasons, you authorize us to process the copy in place of your original check."

13.     At all times relevant, Plaintiff's checking account had a security feature in place that blocked any attempts to electronically debit funds from his checking account using the account information; i.e., account and ABA routing number. On the front of the Plaintiff's checks was also a notation that conspicuously stated that "ACH and/or EFT transactions are unauthorized".

14.    At all times relevant, prior to August 21, 2011, Plaintiff's student loan account was in a deferment status and the Plaintiff was not required to make any payments on the loan while it was in that status. The deferment status ended on July 21, 2011, and monthly payments were due on or before the 21st day of each month with a five day grace-period.

15.    Beginning on or about August 21, 2011, and continuing until November 16, 2011, Plaintiff sent checks to the Defendants as regular payments towards the balance allegedly owed on the student loan account.

16.    On August 22, 2011, the Defendants received a check payment from the Plaintiff in the amount of $500 and attempted to convert the Plaintiff's check into an EFT transaction but were unsuccessful in doing so because of the security feature that blocked attempts to electronically debit funds from the Plaintiff's checking account using the account information.

17.    The Defendants then successfully processed the copy of the check in place of the Plaintiff's original check by depositing the check and posting the amount of that check against the Plaintiff's student loan account.

18.    On September 21, 2011, the Defendants received another check payment from the Plaintiff in the amount of $500 and again attempted unsuccessful to convert the check into an EFT transaction. The Defendants did not process the copy of this check in place of the Plaintiff's original check nor did they post the amount of the check against the student loan account

but assessed Plaintiff's account interest on the balance that should have been reduced by the proper posting of that check payment

19.    On October 20, 2011, the Defendants received another check payment from the Plaintiff in the amount of $500 and once again attempted unsuccessful to convert the check into an EFT transaction. The Defendants did not process the copy of this check in place of the Plaintiff's original check nor did they post the amount of the check against the Plaintiff's student loan account but again assessed Plaintiff's account interest on the balance that should have been reduced by the proper posting of the check payment.

20.    By certified letter dated November 3, 2011, Plaintiff informed the Defendants that he had opted-out of the Defendants' Electronic Check Conversion program and instructed the Defendants to cease processing his check payments as Automated Clearing House (ACH) or Electronic Funds Transfer (EFT) transactions as both of those types of transactions were unauthorized. The Plaintiff also informed the Defendants that they may only deposit the physical paper-check for processing and payment as they did when they received and processed his check payment on August 22, 2011.

21.    The Plaintiff advised the Defendants that because they had failed to post his previous two check payments against the student loan account that the interest that they had assessed against the student loan account must be adjusted to properly reflect the balance as if it had been reduced by the previous two check payments that Defendants had not posted.

22.     The Defendants did not adjust the interest that they had assessed against the Plaintiff's student loan account but continued to improperly and unlawfully inflate the balance on the student loan account by failing to post any of Plaintiff's check payments against the student loan account and assess interest on the balance that should have been reduced by the check payments that the Defendants had received from the Plaintiff.

23.     By certified letter dated November 16, 2011, the Plaintiff sent another check payment to the Defendants in the amount of $500 as a payment towards the balance allegedly owed on the student loan account.

24.     The Plaintiff specifically instructed the Defendants not to process the check electronically and informed them that they should only process the check by making a physical deposit of the paper-check. The Plaintiff advised the Defendants that should they fail to process that check payment in that manner or post it as a payment against the student loan account that they acknowledged and agreed that they shall forfeit any right to collect the amount on the face of that check including any interest assessed on the student loan account as a result of their failure.

25.     On November 21, 2011, the Defendants received this check payment from the Plaintiff, and despite the Plaintiff's specific instructions, the Defendants attempted unsuccessfully to convert the check into an EFT transaction, and never attempted to process the copy of the check in place of the Plaintiff's original check or post the payment against the Plaintiff's

student loan account but improperly assessed interest on the balance that should have been reduced by the proper posting of the check payment.

26.    Each month, plaintiff made payments to the Defendants; the Defendants would hold onto them for 35 days or longer and then reject them to improperly and unlawfully inflate the balance on the student loan by assessing interest on the balance that should have been reduced by the proper posting of those payments.

27.    The Defendants, working jointly with each other, rejected each of those payments to later falsely establish that the Plaintiff was in default, so that all named Defendants could share in the profits from collection costs.

28.    These acts and omissions by the Defendants constitutes a deliberate breach of Defendants' obligations and duty to the Plaintiff in that the Defendants willfully failed to apply any of the payment amounts that they received from the Plaintiff to any late charges and/or collections costs that were due, or to interest that had not been paid or to the principal amount of the student loan as they were required to do as the servicer of Plaintiff's student loan.

29.    Upon information and belief, the Defendants are the subject of a class action lawsuit related to their student loan servicing practices in that numerous consumers have complained about Defendants misapplying their student loan payments, unilaterally consolidating their student loans without borrowers' notice or consent, and other unlawful debt collection activities.

30.    As a result, Plaintiff has been damaged by the Defendants' negligence and conduct.

WHEREFORE, Plaintiff, Joseph Johnson, Jr. demands judgment against the Defendants in the amount of fifty-thousand ($50,000.00) dollars, as and for compensatory damages, plus cost, pre- and post-judgment interest, reasonable attorney's fees, and other relief as the court deems just and proper.

## COUNT II
### (Negligent Servicing and/or Failure to use Due Diligence)

31.    The Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

32.    At all times relevant, as of January 31, 2012, Plaintiff allegedly owed the Department of Education $35,556.58 on a William D. Ford Federal Direct Consolidation Loan Promissory Note of which $24,997.02 plus accrued interest at the rate of 4.4 % was in dispute; hereinafter, the "student loan".

33.    At all times further relevant, the Defendants processed student loan payments for the Department of Education and were the former loan servicer of Plaintiff's student loan. As loan servicer, and under the HEO as enacted on August 14, 2008, and which reauthorized the HEA of 1965, as amended 20 U.S.C. §1087(c), and pursuant to 34 C.F.R. §682.208, the Defendants owed the Plaintiff a duty to use due diligence in servicing his student loan, including, but not limited to, ensuring that interest was not capitalized that had accrued but not yet due at the time of capitalization.

34.    Between June 2004 and February 2012, the Defendants were negligent, breached their duty and failed to use due diligence by capitalizing interest that had accrued but was not yet due at the time of capitalization.

35.    As a result, Plaintiff has been damaged by the Defendants' negligence in an amount to be determined at trial.

WHEREFORE, Plaintiff, Joseph Johnson, Jr. demands judgment against the Defendants in an amount to be determined at trial, plus cost, pre- and post-judgment interest, reasonable attorney's fees, and other relief as the court deems just and proper.

## COUNT III
### (Defamation/Libel/Slander)

36.    The Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

37.    At all times relevant, prior to August 21, 2011, Plaintiff's student loan was in a deferment status and the Plaintiff was not required to make any payments on the loan while it was in that status. The deferment status ended on July 21, 2011, and monthly payments were due on or before the 21st day of each month with a five day grace-period.

38.    At all times relevant, beginning on or about August 21, 2011, and continuing until November 16, 2011, Plaintiff sent checks to the Defendants as regular monthly payments towards the balance allegedly owed on the student loan account, and each month, the Defendants intentionally failed to post any of the payments against the Plaintiff's student loan account

but assessed interest on the balance that should have been reduced by the proper posting of those check payments.

39.   At all times further relevant, the amount due on the student loan account was in a bona-fide dispute, and beginning on October 21, 2011, and continuing until January 21, 2012, the Defendants placed the Plaintiff's student loan account in an administrative deferment status and Plaintiff was not required to make any payments on the loan while it was in that status. The administrative deferment ended on January 21, 2012 and the monthly payments that was due on or before the 21st day of each month, resumed with the next scheduled payment being due on or before February 21, 2012.

40.   On February 20, 2012, the Defendants received a check in the amount of $12,390.00 from the Plaintiff along with detailed correspondence marked as a payment in full, accord and satisfaction of the disputed student loan account at the address that the Defendants had specifically designated for receiving written correspondence. The Defendants were advised of the nature of the check and was on actual notice that the check was tendered as a payment in full, accord and satisfaction of the disputed student loan account.

41.   The Defendants were also provided with an opportunity to reject the check if it did not accept the restrictive language or terms of the tendered check, which, at all times relevant, was tendered in good faith. The Defendants, on February 24, 2012, accepted and negotiated the check and it cleared the Plaintiff's checking account on February 27, 2012.

42.     Despite having received monthly payments from the Plaintiff when they were due and then willfully failing to post the payments against the Plaintiff's student loan account, and having received the benefit of a payment in full, accord and satisfaction of the disputed student loan account on February 20, 2012, beginning on or around February 17, 2013, and continuing until on or about July 23, 2013, the Defendants made or caused to be made an unprivileged publication of statements to third parties to the effect that the Plaintiff was delinquent on his student loan with the Department of Education in the amount of $36,113.

43.     The Defendants' statements were false and slanderous and were made with malice and in bad faith for the sole purpose of financially injuring and destroying the Plaintiff, and to cause damages to the Plaintiff's credit rating and to impugn the Plaintiff as being uncreditworthy.

44.     The Defendants knew that their statements were false and willfully, deliberately and intentionally published them or caused them to be published with actual knowledge that they were false or with reckless disregard of whether they were false or not.

45.     As a result, Plaintiff sustained damages. His credit has been adversely affected and his FICO score has been lowered. He has been denied credit and employment as a direct result of the false and defamatory statements published by the Defendants. He has suffered and continues to suffer mental anguish and personal humiliation.

WHEREFORE, Plaintiff, Joseph Johnson, Jr. demands judgment against the Defendants in the amount of fifty-thousand ($50,000.00) dollars, as and for compensatory damages, punitive damages in an amount to be determined at trial, plus cost, pre- and post-judgment interest, reasonable attorney's fees, and other relief as the court deems just and proper.

**COUNT IV**
<u>(Libel)</u>

46.     The Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

47.     Beginning on or around February 17, 2013, and continuing until July 23, 2013, the Defendants published untrue statements of fact.

48.     The Defendants published these untrue statements of fact knowing that they were false and with reckless disregard of their truth.

49.     The Defendants' publication was intentional, deliberate and was done with malice and in bad faith for the sole purpose of injuring Plaintiff.

50.     As a result of Defendants' intentional actions, the Plaintiff has been injured including the significant damage to his credit.

WHEREFORE, Plaintiff, Joseph Johnson, Jr. demands judgment against the Defendants in the amount of fifty-thousand ($50,000.00) dollars, as and for compensatory damages, punitive damages in an amount to be determined at trial, plus cost, pre- and post-judgment interest, reasonable attorney's fees, and other relief as the court deems just and proper.

## COUNT V
### (Defamation/Libel/Slander)

51.    The Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

52.    Despite having received monthly payments from the Plaintiff when they were due and then wilfully failing to post the payments against Plaintiff's student loan account, and having received the benefit of a payment in full, accord and satisfaction of the disputed student loan account on February 20, 2012, beginning on or around July 24, 2013, and continuing thereafter, the Defendants made or caused to be made an unprivileged publication of statements to third parties to the effect that the Plaintiff had defaulted on his student loan with the Department of Education in the amount of $37,729.39.

53.    The Defendants' statements were false and slanderous and were made with malice and in bad faith for the sole purpose of financially injuring and destroying the Plaintiff and his credit rating, to impugn the Plaintiff as being uncreditworthy and to cause significant financial loss to the Plaintiff.

54.    The Defendants knew that their statements were false and willfully and deliberately published them or caused them to be published with actual knowledge that they were false or with reckless disregard of whether they were false or not.

55.    As a result, Plaintiff sustained damages. His disputed student loan account was improperly placed into a collection status by the Defendants

and assessed collection fees and cost in an amount in excess of $10,250.23. His FICO score has been significantly lowered. He has been denied credit, including, mortgage loans and employment. He has sustained financial damages. He has suffered and continues to suffer mental anguish and personal humiliation, and other compensable damages.

WHEREFORE, Plaintiff, Joseph Johnson, Jr. demands judgment against the Defendants in the amount of fifty-thousand ($50,000.00) dollars, as and for compensatory damages, punitive damages in an amount to be determined at trial, plus cost, pre- and post-judgment interest, reasonable attorney's fees, and other relief as the court deems just and proper.

## COUNT VI
### (Libel)

56.     The Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

57.     Beginning on or around July 24, 2013, and continuing thereafter, the Defendants published untrue statements of fact.

58.     The Defendants published these untrue statements of fact knowing that they were false and with reckless disregard of their truth.

59.     The Defendants' publication was intentional, deliberate and was done with malice and in bad faith for the sole purpose of injuring Plaintiff.

60.     As a result of Defendants' intentional actions, the Plaintiff has been injured including the significant damage to his credit.

WHEREFORE, Plaintiff, Joseph Johnson, Jr. demands judgment against the Defendants in the amount of fifty thousand ($50,000.00) dollars, as and for compensatory damages, punitive damages in an amount to be determined at trial, plus cost, pre- and post-judgment interest, reasonable attorney's fees, and other relief as the court deems just and proper.

## COUNT VII
### (Violation of Maryland Fair Credit Reporting Act)

61.    The Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

62.    At all times relevant, the Defendants qualified as a person who furnished information to a Consumer Reporting Agency ("CRA"), including, but not limited to, Experian, Equifax, and TransUnion, under the Maryland Fair Credit Reporting Act ("MFCRA").

63.    The Defendants have continuously reported or caused to be reported inaccurate and false information relating to the Plaintiff's student loan to third parties, (hereafter the "inaccurate information").

64.    The inaccurate information complained of concerns, among other things, the payment history, the amount allegedly owed on Plaintiff's disputed student loan and the fact of delinquency and default. The reporting of inaccurate information harms the Plaintiff and his credit repayment history, his financial responsibilities as a debtor and his credit worthiness.

65.    The credit reports have been and continue to be disseminated to various persons and credit grantors, both known and unknown.

66.     The Plaintiff has disputed the inaccurate information in writing with the Defendants and the CRA as required under the MFCRA, and has enclosed documents that either proved to the Defendants that their information was inaccurate or provided them with evidence that was supportive of Plaintiff's contentions.

67.     Notwithstanding the efforts of the Plaintiff, the Defendants failed to investigate the dispute, and continued to publish, report and disseminate or cause to be published, reported or disseminated such inaccurate information to third parties, persons, entities, and credit grantors.

68.     Despite Plaintiff's efforts to date, the Defendants have nonetheless deliberately, willfully, intentionally, recklessly and negligently failed to perform reasonable investigations of the above disputes as required by the MFCRA, have failed to remove the inaccurate information, have failed to note the disputed status of the inaccurate information and have continued to report or cause to be reported the inaccurate information about the Plaintiff that they know or should have known to be inaccurate.

69.     Plaintiff has been damaged, and continues to be damaged, including, but not limited to, in the following ways:

a.      Out of pocket expenses associated with disputing the false information, after notice of its falsity was provided to Defendants;

b.      Emotional distress and mental anguish caused by the fact that Defendants reported or caused to be reported and transmitted false

information about Plaintiff to other people and credit institutions, both known and unknown;

    c.    Decreased credit score which has and may result in inability to obtain credit on future attempts;

    d.    Decreased credit score resulting in the cancellation of credit already extended and/or a reduction of credit already extended;

    e.    Denial of the extension of credit and of employment;

70.    At all times pertinent hereto, the Defendants were acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

71.    At all times pertinent hereto, the conduct of the Defendants, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard of the Maryland Fair Credit Reporting Act with the sole intent to injure Plaintiff.

72.    The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the injuries, damages and harm to the Plaintiff that are outlined more fully above and, as a result, Defendants are liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief as may be permitted by law.

WHEREFORE, Plaintiff, Joseph Johnson, Jr., demands judgment against the Defendants for (a) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; (b) any actual damages sustained by the consumer as a result of the failure; (c) such amount of punitive damages as the court may allow; (d) the costs of the action together with reasonable attorney's fees as determined by the court; (e) an order directing that Defendants immediately delete or cause to be deleted all of the inaccurate information from Plaintiff's credit reports and files and cease reporting false information to any and all entities to whom they report consumer credit information; and (f) Other relief as the Court may find necessary and appropriate.

## COUNT VIII
### (Negligent Servicing and/or Failure to use Due Diligence)

73.     At all times relevant, as of January 31, 2012, Plaintiff allegedly owed the Department of Education $35,556.58 on a William D. Ford Federal Direct Consolidation Loan Promissory Note of which $24,997.02 plus accrued interest at the rate of 4.4 % was in dispute; hereinafter, the "student loan".

74.     At all times further relevant, the Defendants processed student loan payments for the Department of Education and were the former loan servicer of Plaintiff's student loan. As loan servicer, and under the Higher Education Opportunity Act (Public Law 110-315) (HEOA) as enacted on August 14, 2008, and which reauthorized the Higher Education Act of 1965, as amended (the HEA), 20 U.S.C. §1087(c), and under the terms of their

Common Services for Borrowers (CSB) contract and 34 C.F.R. § 682.410(b)(5), the Defendants owed the Plaintiff a duty to use due diligence in servicing his student loan, including, sending the defaulted student loan borrower a written notice explaining their rights.

75.   One of these rights, pursuant to 34 C.F.R. §682.410(b)(5)(vi), is the right to an "administrative review of the legal enforceability or past-due status of the loan." Pursuant to 34 C.F.R. § 682.410(b)(5)(iv)(B), "The deadline established by the agency for requesting administrative review under paragraph (b)(5)(ii)(C) of this section must allow the borrower at least 60 days from the date the notice described in paragraph (b)(5)(ii)(A) of this section is sent to request that review."

76.   Federal regulations also require the inclusion of certain specific information in the notice of default. The required information consists, in part, of the following:

a.   Identification of the school for attendance at which the loan was made. 34 C.F.R. § 682.410(b)(5)(vi)(B);

b.   An explanation of the interest rate on the loan, the authority for assessing the costs, and the manner in which the agency will calculate the amount of the costs. 34 C.F.R. § 682.410(b)(5)(vi)(E);

c.   Notification that the agency will report the default to all nationwide consumer reporting agencies to the detriment of the borrower's credit rating. 34 C.F.R. § 682.410(b)(5)(vi)(F);

d.    An explanation of the opportunities available to the borrower under agency rules to request access to the agency's records on the loan, to request an administrative review of the legal enforceability or past-due status of the loan, and to reach an agreement on repayment terms satisfactory to the agency to prevent the agency from reporting the loan as defaulted to consumer reporting agencies and provide deadlines and method for requesting this relief. 34 C.F.R. § 682.410(b)(5)(vi)(G);

e.    A description of the appeal rights available to the borrower from an adverse decision on administrative review of the loan obligation pursuant to 34 C.F.R. §682.410(b)(5)(vi)(J);

f.    A description of the borrower's right to judicial review of an adverse decision by the agency regarding the legal enforceability or past-due status of the loan obligation. 34 C.F.R. § 682.410(b)(5)(vi)(K); and

g.    Pursuant to 34 C.F.R. 682.410(b)(5)(vi)(K), a description of the collection actions that the agency may take in the future if those presently proposed do not result in repayment of the loan obligation, including the filing of a lawsuit against the borrower by the agency and assignment of the loan to the Secretary for the filing of a lawsuit against the borrower by the Federal Government.

77.    Despite having received payments from the Plaintiff when they were due and then wilfully failing to post the payments against Plaintiff's student loan account, and having received a full and final payment from the

Plaintiff on February 20, 2012, beginning on or around July 24, 2013, and continuing thereafter, the Defendants falsely reported that the Plaintiff had defaulted on his student loan with the Department of Education in the amount of $37,729.39. The Defendants knowingly and willfully breached their duty to Plaintiff by, inter alia, failing to send to the Plaintiff the notice required by 34 C.F.R. §682.410(b)(5) or a notice that included an interest rate or explain how the costs were calculated, or the authority for collecting them.

78.    The Defendants also breached their duty by failing to send a notice that notified the Plaintiff that the agency would report the default to all nationwide consumer reporting agencies to the detriment of the Plaintiff's credit rating.

79.    The Defendants further breached their duty by failing to send a notice that included an explanation of the opportunities available to the Plaintiff under agency rules to request access to the agency's records on the loan, to reach an agreement on repayment terms satisfactory to the agency to prevent the agency from reporting the loan as defaulted to consumer reporting agencies, or provide deadlines and method for requesting this relief.

80.    The Defendants also breached their duty by failing to send a notice that included an accurate description of the time period within which the Plaintiff could request an administrative review of the legal enforceability or past-due status of the loan.

81.    The Defendants further breached their duty by failing to send a notice that described any appeal rights available to the Plaintiff from an adverse decision on administrative review of the loan obligation.

82.    The Defendants also breached their duty by failing to send a notice that described any right to judicial review of an adverse decision by the agency regarding the legal enforceability or past-due status of the loan obligation.

83.    The Defendants finally breached their duty by failing to send a notice that mentioned the possibility of the filing of a lawsuit against the Plaintiff by the agency and assignment of the loan to the Secretary for the filing of a lawsuit against the borrower by the federal government.

84.    As a result, Plaintiff has been damaged by the Defendants' negligence and conduct.

WHEREFORE, Plaintiff, Joseph Johnson, Jr. demands judgment against the Defendants in the amount of fifty-thousand ($50,000.00) dollars, as and for compensatory damages, plus cost, pre- and post-judgment interest, reasonable attorney's fees, and other relief as the court deems just and proper.

## COUNT IX
### (Unjust Enrichment)

85.    The Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

86.     By their wrongful acts and omissions, the Defendants have been unjustly enriched at the expense of the Plaintiff, and thus Plaintiff has been unjustly deprived.

87.     By reason of the foregoing, Plaintiff seek restitution from the Defendants, and an order of this Court disgorging all profits, benefits, and other compensation obtained by the Defendants from their wrongful conduct.

## COUNT X
### (Tortious Interference with Contract)

88.     At all times relevant, as of January 31, 2012, Plaintiff allegedly owed the Department of Education $35,556.58 on a William D. Ford Federal Direct Consolidation Loan Promissory Note of which $24,997.02 plus accrued interest at the rate of 4.4 % was in dispute; hereinafter, the "student loan".

89.     At all times further relevant, the Defendants processed student loan payments for the Department of Education and were the former loan servicer of Plaintiff's student loan. As loan servicer, the Defendants were required to use due diligence in servicing Plaintiff's loan, including, ensuring that payments made by the Plaintiff were applied first to late charges and collections costs that were due, then to interest that had not been paid, and finally to the principal amount of the loan.

90.     At all times relevant, beginning on or about August 21, 2011, and continuing until November 16, 2011, Plaintiff sent checks to the Defendants as regular monthly payments towards the balance allegedly owed on the student loan account, and the Defendants, with actual knowledge of

Plaintiff's contract, intentionally and willfully failed to post the payments against Plaintiff's student loan account to later falsely establish that the Plaintiff was delinquent and then in default of his student loan.

91.     These acts by the Defendants constitute a direct interference with the contract between Plaintiff and the Department of Education. The Defendants impeded and prevented performance of the contract by refusing tender of monthly payments made by Plaintiff between August 21, 2011 and November 21, 2011. After the Defendants rejected the Plaintiff's payments, Plaintiff was not required to continue to tender monthly payments, because the Defendants made clear that tendering further payments would be futile.

92.     As a result, Plaintiff has sustained damages in the form of collection fees and cost. His credit has been adversely affected and his FICO score has been lowered. He has been denied credit and employment. He has suffered and continues to suffer mental anguish and personal humiliation.

WHEREFORE, Plaintiff, Joseph Johnson, Jr. demands judgment against the Defendants in the amount of fifty-thousand ($50,000.00) dollars, as and for compensatory damages, punitive damages in an amount to be determined at trial, plus cost, pre- and post-judgment interest, reasonable attorney's fees, and other relief as the court deems just and proper.

### COUNT XI
(Breach of Agreement)

93.     At all times relevant, as of January 31, 2012, Plaintiff allegedly owed the Department of Education $35,556.58 on a William D. Ford Federal

Direct Consolidation Loan Promissory Note of which $24,997.02 plus accrued interest at the rate of 4.4 % was in dispute; hereinafter, the "student loan".

94.    On February 20, 2012, the Defendants received a check in the amount of $12,390.00 from the Plaintiff along with detailed correspondence marked as a payment in full, accord and satisfaction of the disputed student loan account at the address that the Defendants had specifically designated for receiving written correspondence. The Defendants were advised of the nature of the check and was on actual notice that the check was tendered as a payment in full, accord and satisfaction of the disputed student loan account.

95.    The Defendants were also provided with an opportunity to reject the check if it did not accept the restrictive language or terms of the tendered check, which, at all times relevant, was tendered in good faith. The Defendants, on February 24, 2012, accepted and negotiated the check and it cleared the Plaintiff's checking account on February 27, 2012.

96.    Beginning on or around February 17, 2013, and continuing until on or about July 23, 2013, the Defendants falsely published to third parties that the Plaintiff was delinquent on his student loan with the Department of Education in the amount of $36,113.

97.    Then, beginning on or around July 24, 2013, and continuing thereafter, the Defendants falsely published or caused to be published to third parties that the Plaintiff had defaulted on his student loan with the Department of Education in the amount of $37,729.39.

98.     These acts by the Defendants constitutes a breach of the terms of the accord and satisfaction, and as a result, Plaintiff has sustained damages, including, but not limited to, in the form of collection fees and cost. His credit has been adversely affected and his FICO score has been lowered. He has been denied credit and employment. He has suffered and continues to suffer mental anguish and personal humiliation.

WHEREFORE, Plaintiff, Joseph Johnson, Jr. demands judgment against the Defendants in the amount of fifty-thousand ($50,000.00) dollars, as and for compensatory damages, punitive damages in an amount to be determined at trial, plus cost, pre- and post-judgment interest, reasonable attorney's fees, and other relief as the court deems just and proper.

## COUNT XII
### (Intentional Infliction of Emotional Distress)

99.     The Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

100.    The Defendants deliberately and intentionally engaged in unfair and deceptive trade practices during the course of servicing the Plaintiff's student loan and caused the Plaintiff to sustain the unlawful inflation of the balance allegedly owed on the student loan when the Defendants knowingly, willfully, deliberately and intentionally failed to post any of Plaintiff's check payments against the student loan account and then continued to assess interest on the balance that should have been reduced by each of the respective check payments that the Defendants received from the Plaintiff.

101.   The Defendants further deliberately and intentionally engaged in unfair and deceptive trade practices during the course of servicing the Plaintiff's student loan, when, despite having received a full and final payment from the Plaintiff on February 20, 2012 of the disputed debt, the Defendants published or caused to be published to third parties information that falsely indicated that the Plaintiff was delinquent and then in default of his student loan, when, in fact, Defendants knew the information was false.

102.   The Defendants' conduct was part of a scheme and artifice to defraud and was designed to falsely establish that the Plaintiff was in default, so that all named Defendants could share in the profits from collection costs on the student loan and cause Plaintiff financial injury.

103.   This unlawful conduct was perpetrated by the agents, servants and employees of the Defendants and within the scope of their employment. The Defendants are responsible for all of the acts committed by its agents within the scope of their employment. The Defendants deliberately and intentionally made false representations of material fact to third parties and caused the Plaintiff to sustain an adverse credit rating, a lower FICO score and the denial of credit and employment.

104.   This unlawful conduct was perpetrated by the agents, servants and employees of the Defendants and within the scope of their employment. The Defendants are responsible for all of the acts committed by its agents within the scope of their employment.

105. All of the Defendants' conduct described in the preceding paragraphs were extreme and outrageous and was done intentionally, recklessly, and in deliberate disregard of a high degree of probability that emotional distress would result to the Plaintiff. The Defendants knew that their conduct would or could cause emotional distress upon the Plaintiff.

106. The Defendants' conduct was malicious, willful, deliberate and intentional and was done with malice for the sole purpose of inflicting severe emotional distress upon the Plaintiff.

107. As a result, Plaintiff suffered loss of sleep, headaches, severe mental pain, and depression and will continue to suffer, severe and extreme emotional distress.

WHEREFORE, Plaintiff, Joseph Johnson, Jr. demands judgment against the Defendants in an amount of to be determined at trial, as and for compensatory damages, punitive damages in an amount also to be determined at trial, plus cost, pre- and post-judgment interest, reasonable attorney's fees, and other relief as the court deems just and proper.

Respectfully submitted,

April 11, 2014

Joseph Johnson, Jr.
Post Office Box 441572
Fort Washington, MD   20749
240-605-9921

## CERTIFICATE OF SERVICE

On April 11, 2014, a copy of the foregoing paper was mailed to:

Richard James Mitchell
K&L Gates LLP
1601 K Street, NW
Washington, DC 20036-3437

by regular, first-class mail, postage prepaid.

Joseph Johnson, Jr.